UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN D. ROBBINS,

               Plaintiff,                       Case No. 5:14-cv-13114
                                                 District Judge John Corbett O'Meara
v.                                        Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

## RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 16) AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 12)

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment (DE 16), **DENY** Plaintiff's motion for summary judgment (DE 12), and

**AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

     Plaintiff, Kevin D. Robbins, brings this action under 42 U.S.C. §§ 405(g)

and 1383(c)(3) for review of a final decision of the Commissioner of Social

Security  ("Commissioner") denying his applications for social security disability

insurance benefits.  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (DE

12), the Commissioner's memorandum in opposition and cross motion for summary judgment (DE 16), Plaintiff's reply (DE 17), and the administrative record (DE 9).

### A.   Background

Plaintiff protectively filed his application for benefits on May 12, 2011, alleging that he has been disabled since September 25, 2009, at age 46.  (R. at 89.) Plaintiff alleges disability as a result of a herniated disc, high blood pressure, and non-active polycystic kidney disease.  (Id.)  Plaintiff's application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  ALJ Roy L. Roulhac held a hearing on October 25, 2012 and subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 13-70.)   On August 5, 2014, the Appeals Council denied Plaintiff's request for review.  (R. at 1-4.)  ALJ Roulhac's decision became the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

### B.   Plaintiff's Medical History

Plaintiff initially injured his back in 2002, when he suffered a herniated L5-S1 disk after lifting a heavy object.  In 2003, he underwent spinal fusion surgery at the L5-S1 level and had no symptoms for more than five years.  (R. at 427.) Plaintiff's back pain returned in 2009 when he fell at work.  From October 2009

until November 2009, Plaintiff underwent physical therapy at DMC Sports

Medicine.  Plaintiff reported soreness and tenderness, but with improved pain

levels.  (R. at 302-321.)  On November 4, 2009, the therapy was terminated due to

Plaintiff's soreness.  (R. at 305.)

Plaintiff was seen by Miles Singer, D.O., PLCC, from November 2009 through

February 2010.  In December 2009, Plaintiff underwent an MRI.  (R. at 326.)  Dr. Singer

noted that his lumbar vertebral column was of normal alignment, with slight decreased

disc hydration and diffuse disc bulge in L2/L3.  (Id.)  Dr. Singer did not believe Plaintiff

was a suitable candidate for surgical intervention.  Instead, he recommended a

conservative course of treatment with a physical therapy program and epidural injections.

(R. at 330.)  He prescribed full dose anti-inflammatories, analgesics, and muscle relaxers,

noting that Plaintiff should refrain from driving while on the pain medications.  (Id.)  In

addition, he recommended that Plaintiff refrain from strenuous work. (R. at 333.)

Plaintiff saw Dr. Sabbir Ahmed at St. Joseph Mercy Port Huron from January 13,

2010 through March 1, 2010.  Upon a physical exam, Dr. Ahmed  noted tenderness in the

lumbar spine, limited flexion, and a motor strength of 5/5.  (R. at 368.)  He recommended

that Plaintiff undergo lumbar epidural steroid injections.  (Id.)  His first injection

occurred on January 13, 2010 and the second on January 27, 2010.  (R. at 359.)  Plaintiff

reported no lasting improvement following the procedure.  (R. at 349.)  As a result, Dr.

Ahmed administered a diagnostic facet joint injection on February 16, 2010.  (R. at 342.)

Plaintiff reported mild improvement, but was unable to receive a second injection because "compensation [did not] approve it."  (Id.)

Plaintiff saw Dr. Kanwaldeep Sidhu from May 6, 2010 through September 1, 2010. Dr. Sidhu noted that Plaintiff had no motor loss, but his forward flexibility was limited. (R. at 410.)  He encouraged Plaintiff not to purse surgical intervention at this stage, and instead recommended a TENS unit, water therapy, and pain medication.[1]  (Id.)

Plaintiff was treated by Dr. Jerome Finkel and Dr. Thomas Nabity at Internal Medicine Associates from July 2009 through at least September 2012.  In April 2010, Dr. Nabity noted L5-S1 disc herniation with right L4-L5 disc protrusion on Plaintiff's most recent MRI.  (R. at 428.)  He recommended increasing Plaintiff's dosage of Vicodin and adding Opana.  (Id.)  In October 2010, he noted that Plaintiff should continue on his current treatment regimen as he was "overall happy with his pain control."  (R. at 425.) In December 2010, Dr. Finkel noted that Plaintiff was "pretty satisfied with his level of pain" while taking Opana once and Vicodin twice per day.  (R. at 421.)  In addition, Plaintiff indicated that he was trying to stay active and keep his weight down.  Plaintiff noted that he did not take Vicodin some days and recounted a recent event of nausea and

---

[1] A Transcutaneous Electrical Nerve Stimulation Unit ("TENS Unit") is a device that produces an electric current to stimulate the nerves and reduce pain. *Transcutaneous electrical nerve stimulation (TENS) for chronic pain*, Nat'l Library of Med., http://www.ncbi.nlm.nih.gov/pubmed/11687055 (last visited April 30, 2015).

vomiting, but noted that he was better and having no subsequent problems.[2]  (R. at 421.)
On January 16, 2012, Plaintiff noted that he was "overall happy with his current level of
pain control and current level of function."  (R. at 513.)  Plaintiff saw Dr. Nabity on
August 6, 2012.  (R. at 509.)  Dr. Nabity recommended increasing Plaintiff's dose of
Opana and exploring whether Plaintiff was a candidate for repeat radiofrequency ablation
treatments.  (Id.)

Dr. Nabity filled out a medical source statement on October 25, 2102.  (R. at 548-
552.)  In the statement, Dr. Nabity noted that Plaintiff had severe stabbing pain that was
aggravated by activity.  Dr. Nabity indicated that Plaintiff's symptoms would frequently
interfere with his attention and concentration.  He opined that Plaintiff should be limited
to fifteen minutes of sitting, ten minutes of standing, with a combined ability to sit and
stand for two hours in an eight hour workday.  (R. at 549-550.)  He indicated that
Plaintiff was limited to lifting less than ten pounds occasionally.  (R. at 551.)  Finally, he
opined that Plaintiff's symptoms would cause him to be absent from work more than four
times per month.  (R. at 551.)

Dr. Scott Lazarra at Michigan Medical Consultants, P.C., performed a consultative
examination at the request of the Social Security Administration on July 27, 2011.  Dr.

---

[2] Plaintiff had another incident of nausea and vomiting, which he relates to Opana,
on September 7, 2011.  (R. at 454-473.)  He was seen at the St. Joseph Mercy Port
Huron emergency room after failing to reduce his dosage of Opana.  (R. at 467.)
("[One] week ago his doctor advised him to reduce the dose but patient did not.")
He was discharged home the same day.  (R. at 469.)

Lazarra noted that Plaintiff has a history of degenerative arthritis to his lumbar spine, which causes pain to radiate down both of his hips.  (R. at 449.)  He notes that Plaintiff uses a TENS unit, "which does seem to help."  (Id.)  Dr. Lazarra indicated that Plaintiff drives locally, is able to do light yard work, garden, and work on classic cars as long as he can pace himself and take breaks.  Dr. Lazarra noted that Plaintiff can sit and stand for ten minutes, can walk for a quarter of a mile, and can lift 25 pounds on occasion.  (Id.)  He concluded that Plaintiff appears neurologically stable.  (R. at 453.)  Upon examination, Dr. Lazarra found Plaintiff's dexterity unimpaired, no difficulty getting on and off the examination table, a negative straight leg raise test, but with mild difficulty heel and toe walking, squatting, and hopping.  (R. at 450.)  According to Dr. Lazarra, Plaintiff's degree of impairment was mild to moderate and slowly declining, with a fair prognosis.  (Id.)

Plaintiff began seeing Dr. Alan Robertson on October 6, 2011 and continued treatment with him through February 14, 2012.  Dr. Robertson reviewed Plaintiff's MRI and found trauma to his lower back and disc joint disruption.  (R. at 498.)  Dr. Robertson noted that Plaintiff should avoid repetitive motion activities and alternate sitting, standing, walking and recumbent positions.  (R. at 499.)  He, without additional information, identified Plaintiff's employment status as "medically disabled from employment at this time."  (Id.)

6

Dr. Robertson completed a medical source statement on October 25, 2012. (R. at 553.)  He opined that Plaintiff did not have the ability to do a sit down job with a sit-stand option and would continue to require narcotic pain medications that would interfere with his ability to perform the job.  Dr. Robertson indicated that Plaintiff would need to lie down two to four hours per day, would be unable to climb, balance, kneel, crouch, or crawl.  (R. at 556.)  He opined that Plaintiff would be unable to reach in all directions, but his impairment did not impact his ability to handle, finger, or feel.  (R. at 556.)  Finally, he noted that Plaintiff's impairments did not cause any visual or communicative limitations.  (R. at 557.)

On September 6, 2011, State Agency Reviewing Physician Dale Blum, M.D., reviewed the record and assessed Plaintiff's physical functioning capacity. (R. at 89-99.)  Dr. Blum opined that Plaintiff could lift ten pounds occasionally, stand or walk for four hours and sit for six hours in an eight hour workday, and had and unlimited ability to push or pull.  Dr. Blum noted that Plaintiff's medically determinable impairment could reasonably be expected to produce his pain, but that Plaintiff's statements about the intensity, persistence, and functionally limiting effect of the symptoms was not substantiated by objective medical evidence alone. (R. at 95.)

### C.   Hearing Testimony

#### 1.   Plaintiff's Testimony

At the October 25, 2012 administrative hearing, Plaintiff testified that he stopped working in 2009 after falling at work and reinjuring his back. (R. at 37.) Plaintiff testified that, despite his treatment of physical therapy and injections, his back-pain level has worsened over the years. (R. at 38.) He describes his back pain as a "stabbing pain that goes down the back of [his] leg." (R. at 52.)

Plaintiff averred that he takes Opana, a synthetic morphine, daily. (R. at 50.) In addition, he takes up to three Vicodin pills per day for breakthrough pain. (R. at 43.) Plaintiff also wears a back brace, utilizes a TENS Unit at home, and receives epidural injections to temporarily alleviate the pain. (R. at 56-57.)

Plaintiff testified that the medication makes him groggy and that he frequently sits in his recliner chair, watches television, and naps during the day. (R. at 51.) He averred that he cannot sit for very long at one time and that his polycystic kidney disease exacerbates his daily fatigue. (R. at 58.) Plaintiff further testified that he cannot walk more than 200 feet at a time, and that his back pain increases with movement. (R. at 51 and 65.) Plaintiff indicated that he accompanies his wife on trips to the grocery store, but uses the cart "like a walker," and sits at the bench in the front of the store if he gets too tired. (R. at 61.) In addition, he takes his dog outside, does light food preparation when necessary,

reads car magazines, does some car restoration ("more or less just polishing the fender"), and attends his daughters' sporting events to the extent he is able. (R. at 59-65.)

### 2.    Vocational Expert Testimony

Diane Regan testified as the Vocational Expert ("VE") at the October 25, 2012 administrative hearing. (R. at 66-69.) The ALJ asked the VE to determine if there was any work in the regional or national economy that a hypothetical person of Plaintiff's age, educational background, and work experience could perform with the following limitations:

> Assume that this hypothetical person could perform a job at the sedentary exertional level; can lift and carry up to ten pounds; sitting for six hours; standing and walking for two hours. This hypothetical person would need a sit/stand option at will to stand and walk around to relieve pain and discomfort; he could only occasionally climb ramps and steps, balance, stoop, kneel, crouch, and crawl. And this hypothetical person should avoid unprotected heights.

(R. at 67.) Based on this hypothetical, the VE acknowledged that Plaintiff could not perform his past relevant work of sales route driver and transport driver, which are both performed at the medium exertion level. (R. at 66.) The VE testified, however, that the hypothetical individual could perform sedentary unskilled positions, including inspector, with 2,000 jobs in Southeast Michigan and 100,000 nationally, bench assembler, with 3,000 jobs in Southeast Michigan and 160,000 nationally, and  sorter, with 2,000 jobs in Southeast Michigan and 120,000

9

nationally.  (R. at 67.)  When asked about being off task for more than twenty

percent of the day for unscheduled breaks, the VE testified that it would be work

preclusive.  (R. at 72.)  The VE also testified that the need to recline for an hour up

to twice a day would be work preclusive.  (R. at 68.)

### D.  THE ADMINISTRATIVE DECISION

On November 14, 2012, the ALJ issued his decision.  (R. at 13-30.)  At step

one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not

engaged in substantially gainful activity since September 25, 2009.  (R. at 18.)  At

step two, the ALJ found that Plaintiff had the following severe impairments:

disorder of the back, status/post anterior lumbar interbody fusion and

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).
Although a dispositive finding at any step terminates the ALJ's review, *see Colvin
v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential
review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet
    or equal the criteria of an impairment set forth in the Commissioner's
    Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can the
    claimant perform his or her past relevant work?
5.  Considering the claimant's age, education, past work experience, and
    residual functional capacity, can the claimant perform other work
    available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th
Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

microdisectomy, obesity, and failed back syndrome. (R. at 19.) The ALJ further found that Plaintiff's history of hypertension, hyperlipidemia, polycystic renal disease, gastric reflux disease, anxiety, diverticulosis, and obstructive sleep apnea were not severe impairments. (Id.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19-20.) At step four of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[3] and determined that Plaintiff can perform sedentary work, but requires a sit/stand option at will to relieve pain and discomfort. (R. at 20.) In addition, the ALJ limited Plaintiff to occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and must avoid exposure to unprotected heights. (Id.) In reaching the determination, the ALJ gave "significant weight" to the opinion of stage agency medical consultant Dale Blum, M.D., noting that his opinion was consistent with the Plaintiff's decreased range of motion, but also reflected the treatment notes showing his increased tolerance for more activities. (R. at 23.) The ALJ assigned limited weight to Dr. Miles Singer's

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

opinion, indicating that it was vague and did not adequately define Plaintiff's limitations.  (R. at 21.)  He assigned little weight to the opinion of Dr. Jerome Finkel, noting that his recommendation that Plaintiff not bend, stretch, twist, turn, or walk on his heels and toes was inconsistent with Plaintiff's strength and negative straight leg raise tests.  (R. at 22.)  The ALJ assigned some weight consultative examiner Dr. Scott Lazzara's opinion, to the extent that it was consistent with Plaintiff's negative straight leg raise and strength.  (R. at 23.)  The ALJ also assigned some weight to Dr. Alan Robertson's opinion, noting that some of his suggested restrictions were inconsistent with Plaintiff's stated activities of daily living.  (R. at 23.)  In addition, he assigned limited weight to Dr. Robertson's residual functional capacity worksheet, indicating that his assessment was "grossly out of proportion" with Plaintiff's strength and activities of daily living.  (R. at 24.)  He assigned limited weight to the residual functional capacity worksheet completed by Dr. Nabity, noting that his opinion was inconsistent with Plaintiff's spinal strength, improvement of symptoms, and activities of daily living.  (R. at 23-24.)

Relying on the VE's testimony, the ALJ determined that Plaintiff was unable to perform his past relevant work as route salesmen and transport driver, but concluded that he was capable of performing other jobs that exist in significant

12

numbers in the state and national economy.  (R. at 24.)   He therefore concluded

that Plaintiff was not disabled under the Social Security Act.  (R. at 25.)

### E.   STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F. ANALYSIS

In his motion for summary judgment, Plaintiff asserts three statements of error. First, he contends that the ALJ erred in his articulation that Plaintiff's medical impairments failed to meet the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically listing 1.04. Second, he argues that the ALJ failed to afford proper weight to he evidence presented by Plaintiff's treating physician. Finally, Plaintiff asserts that the ALJ erred in his

credibility determination.  The Commissioner opposes Plaintiff's motion, asserting that she is entitled to a grant of summary judgment because substantial evidence supports the ALJ's conclusions.  The Undersigned will address each argument in turn.

### 1. Substantial Evidence Supports the ALJ's Conclusion That Plaintiff Does Not Have a Listing Level Impairment

In this case, the ALJ found that Plaintiff has severe impairments of disorder of the back, status/postanterior lumbar interbody fusion and microdisectomy; obesity, and failed back syndrome."  (R. at 19.)  He then went on to step three to conclude that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity" of any of the listed impairments.  (Id.)  Plaintiff now argues that the ALJ's conclusion that he did not meet the criteria for Listing 1.04 constitutes legal error warranting an immediate award of benefits.

Plaintiff bears the burden of proving that his impairments meet or medically equal a particular listing.  *See Buress v. Sec'y of Health & Hum. Serv's*, 835 F.2d 139, 140 (6th Cir. 1987).  The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).  "A claimant must satisfy all of the criteria to meet the

15

listing." *Rabbers*, 582 F.3d at 653.  Moreover, all of the criteria must be met

concurrently for a period of twelve continuous months.  *See* 20 C.F.R.

§404.1525(c)(3), (4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.00D ("[b]ecause

abnormal physical findings may be intermittent, their presence over a period of

time must be established by a record of ongoing management and evaluation").

Listing 1.04 covers "[d]isorders of the spine . . . resulting in compromise of

the nerve root . . . or the spinal cord" with the following:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04.  In arguing that he meets the criteria

of this Listing, Plaintiff relies on Dr. Nabity's findings that Plaintiff's pain was

severe and stabbing, that he had limitations in his range of motion, that he was

limited to sitting for fifteen minutes and standing for ten minutes.  In addition, he

16

relies on the opinion of Dr. Robertson, who indicates that Plaintiff would need to lie down two to four hours per workday.

Plaintiff does not, however, articulate a particular part of Listing 1.04 that his impairment meets or equals. Instead, in his reply brief, he argues that the ALJ erred in failing to articulate the reasons in which Listing 1.04 was not met. The ALJ's analysis of Listing 1.04 is as follows:

> The limitations of the claimant do not satisfy the terms of listing 1.04 for disorders of the back. The claimant is not so functionally limited and the evidence does not support the required medical findings required by listing 1.04 such as a condition that results in the compromise of a nerve root with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication established by findings on appropriate medically acceptable imaging and manifested by chronic pain and weakness.

(R. at 20.)

"An ALJ need not discuss every piece of evidence in the record for his [or her] decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 6661, 665 (6th Cir. 2004). However, "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (6th Cir. 2001). Instead, the ruling must "clearly articulate the rationale underlying the decision" in order to facilitate meaningful judicial review. *Bailey v. Comm'r of Soc. Sec.*, 173 F.3d 428, at *3 (6th Cir. 1999).

17

Here, even if the ALJ did not fully explain his reasoning in his analysis under step three, he does discuss the relevant medical evidence at step four when assessing Plaintiff's RFC. *See, e.g., Harvey v. Comm'r of Soc. Sec.*, No. 14-cv-10614, 2014 WL 5465531, at *4 n. 1 (E.D. Mich. Oct. 28, 2014). Additionally, substantial evidence supports this determination. Because Plaintiff does not identify which subcategory of Listing 1.04 he purports to meet, the Undersigned will examine each in turn.

First, in order to meet Listing 1.04(A), Plaintiff must demonstrate:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, *if there is involvement of the lower back*, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04 (emphasis added). In his opinion, the ALJ noted Plaintiff's good strength, full range of motion, and multiple negative straight-leg raise tests. (R. at 21-22.) In addition, the ALJ emphasizes Dr. Robertson's notation that Plaintiff's nerve conduction studies were within normal limits. (R. at 23.) A review of Plaintiff's medical records indicates that he has little to no motor loss (R. at 410, 452), has normal strength (R. at 327, 330, 333, 335, 425), and has no sensory or reflex loss (R. at 549). Furthermore, although Plaintiff has lower back involvement (R. at 20), the record contains evidence of repeated negative straight-leg raises (R. at 327, 450, 496.) Accordingly,

substantial evidence supports the ALJ's conclusion that Plaintiff does not meet Listing 1.04(A).

Second, in order to meet Listing 1.04(B), Plaintiff must demonstrate confirmed evidence, by operative note or pathology report of tissue biopsy, of spinal arachnoiditis manifested by severe burning and resulting in the need for changes in position or posture more than once every two hours. Plaintiff does not direct the Court to medical evidence demonstrating spinal arachnoiditis. Indeed, the record evidence shows that various physicians reviewing Plaintiff's MRIs did not indicate any evidence of spinal arachnoiditis. (R. at 323, 327, 427, and 497-98.) In his opinion, the ALJ addressed Dr. Singer's and Dr. Robertson's 2009 MRI reports, neither of which indicated a finding of spinal arachnoiditis. (R. at 23.) Based on the foregoing, substantial evidence supports the ALJ's conclusion that Plaintiff's condition does not meet or equal Listing 1.04(B).

Finally, in order to meet or equal Listing 1.04(C), Plaintiff must demonstrate evidence of lumbar spinal stenosis resulting in pseudoclaudication resulting in an inability to ambulate effectively.[3] Here, the ALJ points to evidence, including

---

[3] An inability to ambulate effectively means "an extreme limitation of the ability to walk" and "is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. § 404 Subpt. P, App. 1 § 101(B)(2)(b). Examples of ineffective ambulation include "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the

Plaintiff's own testimony, indicating that Plaintiff is able to ambulate effectively. (R. at 20.)  For example, Plaintiff avers that he walks around his yard, takes his dog around his yard, walks out to the end of his driveway to get his newspaper, attends car shows once per month, and attends his daughters' sporting events.  (R. at 40, 44, 60, 64.)  Plaintiff's testimony (R. at 37), along with the medical record evidence, demonstrates that Plaintiff did not use a cane or other device for any of the walking to which he testified.  (R. at 253, 448, 452, 550.)  Moreover, none of the evidence, including Plaintiff's testimony, indicates that his physicians imposed any restrictions on walking.  Based on the foregoing, substantial evidence supports the ALJ's conclusion at step three that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of Listing 1.04.

## 2.     Substantial Evidence Supports the ALJ's Weighing of Opinion Evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(d).  The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or

---

inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail."  Id.

mental restrictions." 20 C.F.R. § 416.927(a)(2). "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 CFR § 404.1527(e)(2)(i). The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants.

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(d)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements, specifically:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice

21

of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion."  20 C.F.R. § 416.927(d)(2).  Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted).  The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied."  *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.  Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled."  *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

Plaintiff contends that the ALJ erred by failing to give substantial deference to the treating physicians' evidence.  Specifically, Plaintiff asserts that the ALJ misstated Plaintiff's activities of daily living of mowing the lawn and working on

cars as an improper method of minimizing the opinion of Plaintiff's treating physicians. According to Plaintiff, although Plaintiff did testify that he mowed the lawn, did car repairs, and attended car shows, he also indicated that those activities require breaks and extra pain medication. Plaintiff posits that, by ignoring objective evidence and relying on "selectively interpreted" evidence, the ALJ failed to provide good reasons for discounting the opinion of Plaintiff's treating physicians. (DE 17 at 2.)  Plaintiff does not indicate which of Plaintiff's treating physician opinions the ALJ failed to weigh appropriately.

Defendant asserts that substantial evidence supports the ALJ's evaluation of the medical evidence. In support of this contention, she reviews the opinions of Drs. Nabity and Robertson, because the ALJ mentions Plaintiff's activities of daily living in his assessment of those treating source opinions. Defendant asserts that substantial evidence supports the ALJ's treatment of both physicians' opinions because Dr. Nabity's opinion was inconsistent with his own medical reports and Dr. Robertson's opinion was out of proportion with Plaintiff's strength. The Undersigned will consider the ALJ's analysis of each physician's opinion in turn.[4]

---

[4] As a preliminary matter, the Undersigned need not address the ALJ's incorrect conversion of yards to feet at the hearing. Specifically, Plaintiff notes that the ALJ erred in the hearing by stating "and in this report you said you could walk 50 yards. And that is certainly more than 200 feet." (R. at 65.) The ALJ did not cite to this evidence in his assessment of either Dr. Nabity or Dr. Robertson's opinions, or even discuss Plaintiff's ability to walk when assessing his credibility. Moreover, Plaintiff has not indicated how the ALJ's incorrect conversion and arithmetic was

### A.     Dr. Nabity

The ALJ assigned limited weight to Dr. Nabity's opinion that Plaintiff was limited to a less than sedentary exertional level, would need unscheduled breaks every fifteen minutes, and would likely miss more than four days of work per month.  As explanation, the ALJ noted that it was inconsistent with other evidence in the record, including Plaintiff's "spinal strength, improvement of symptoms, and significant activities of daily living," which included mowing the lawn, shopping, and preparing meals.  (R. at 24.)

A treating physician's opinion is not entitled to controlling weight where it is not supported by other evidence in the record.  *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014).  Here, the ALJ appropriately indicated that he did not afford controlling weight to Dr. Nabity's opinion because it was inconsistent with the record, including Plaintiff's normal spinal strength, improved symptoms, and activities of daily living.  Furthermore, substantial evidence supports this assertion.

Dr. Nabity's own treatment notes are inconsistent with his conclusion that Plaintiff is limited to a less than sedentary exertional level, would need

---

harmful in his case, and therefore has not met his burden in establishing an error. *See Shineski v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

unscheduled breaks every fifteen minutes, and would likely miss more than four days of work per month.  For example, his April 9, 2012 notes indicate that Plaintiff responded "modestly" to injection treatments and radiofrequency ablation and "feels that he is able to tolerate doing more activities such as working on his car."  (R. at 511.)  Dr. Nabity also notes that, as of January 16, 2012, Plaintiff was "overall happy with his current level of pain control and current level of function."  (R. at 513.)  In addition, he indicates that as of October 10, 2011, Plaintiff has been able to "increase his activity."  (R. at 516.)  Finally, Dr. Nabity made multiple observations that Plaintiff had normal strength in his back.  (R. at 509, 516, and 518.)  Evidence of Plaintiff's activities of daily living and normal strength is present throughout the record.  (*See, e.g.*, R. at 325, 327, 330, 333, 335, 410, 425, and 449.)  Accordingly, the ALJ provided a good reason for discounting the opinion of Plaintiff's treating physician Dr. Nabity, and substantial evidence supports that conclusion.

### B.    Dr. Robertson

The ALJ considered Dr. Robertson's treatment notes from October 2011 through February 2012, in addition to his October 2012 RFC worksheet.  (R. at 23-24.)  In the treatment notes, the ALJ points out Dr. Robertson's comments that Plaintiff was "neurologically intact," "noted improved low back pain, indicating that treatment was helping his symptoms," would need to alternate between sitting

and standing positions, and "should avoid any and all activities that would place stress on his lower back." (R. at 23.) The ALJ concluded that Dr. Robertson's recommendation relating to Plaintiff's lower back was inconsistent with Plaintiff's stated activities of daily living, but gave the rest of his opinion "some weight." (Id.) The ALJ assigned limited weight to Dr. Robertson's RFC worksheet, indicating that Plaintiff cannot lift anything at all, can never climb ramps, stairs, ladders, ropes, or scaffolds, and can never balance crouch, kneel or crawl. As explanation, the ALJ noted that the opinion was "grossly out of proportion" with Plaintiff's upper extremity strength and activities of daily living, including minor household repairs and attending car shows. (R. at 24.)

The ALJ appropriately summarized his reasons for assigning less weight to Dr. Robertson's various opinions as inconsistent with the record, and substantial evidence supports the ALJ's conclusion. Sufficient evidence in the record supports the finding that Plaintiff could lift more than Dr. Robertson opined. The record evidence indicates that Plaintiff had normal strength in his upper extremities. (*See, e.g.,* R. at 325, 327, 330, and 448.) Moreover, Plaintiff noted that he could lift up to 25 pounds, care for his pets, cook simple meals, mow the yard with breaks, and go shopping with his wife. (R. at 40, 247-250, 449.) The record also provides evidence of Plaintiff's intact grip strength and negative straight-leg raises. (R. at

26

327, 330, and 450.)  Accordingly, the ALJ's treatment of the opinion evidence was not in error.

### 3. Substantial Evidence Supports the ALJ's Conclusions with Regard to Plaintiff's Credibility

Plaintiff asserts that the ALJ erred by making an impermissible credibility finding relating to Plaintiff's complaints of pain.  Specifically, Plaintiff argues that the ALJ's decision improperly failed to address Plaintiff's ability to maintain concentration, persistence, his ability to perform activities of daily living, the location, frequency, and intensity of his pain, aggravating factors, the type, dosage, and side effects of medication, his treatment for pain, and any other measures taken to relieve the pain.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008). Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).  "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters,* 127 F.3d at 531.  When assessing an individual's credibility, "the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to

27

produce the symptoms alleged." *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011).  The ALJ made this finding here, concluding that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (R. at 21.)

Upon making such a finding, the ALJ must next "consider the entire case record" to "evaluate the intensity, persistence, and functional limitations of the symptoms considering objective medical evidence."   20 C.F.R. § 404.1529(c)(1-3); Soc. Sec. Rul. 96-7p.  A non-exhaustive list of relevant factors to be considered by the ALJ include: 1) the claimant's daily activities; 2) location, duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of medication; 5) treatment, other than medication; 6) any measures the claimant uses or has used to relieve his or her pain or other symptoms; and 7) other factors concerning functional limitations and restrictions.  *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 474 (6th Cir. 2014); 20 C.F.R. § 404.1529(c)(1-3); Soc. Sec. Rul. 96-7p; *see also Ewing v. Astrue*, No. 10-cv-1792, 2011 WL 3843692, at *9 (N.D. Ohio, Aug 12, 2011) ("Social Security Ruling 96-7p requires such factors to be *considered*, not *discussed* . . . .") (emphasis in original) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006)).  In his or her opinion, the ALJ must "provide a sufficiently specific explanation for his [or her] credibility determination so that it is clear to

28

the individual and any subsequent reviewers the weight given to the individual's statements and the reasons for that weight." *Malcom v. Comm'r of Soc. Sec.*, No. 13-15188, 2015 WL 1539711, at *7 (E.D. Mich. Mar. 27, 2015) (citing *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1997)).

Here, the ALJ provided a sufficiently specific explanation for his credibility determination, pursuant to the rule. First, he addressed Plaintiff's stated activities of daily living, including his occasional shopping with his wife, taking the dog outside, requiring assistance taking care of personal grooming, doing very little around the house, getting the paper, and mowing the lawn. (R. at 20.) He went on to address Plaintiff's statement that he can no longer work on his car, but can walk 200 feet, stand for five minutes, and sit for 15 to 20 minutes. As the ALJ noted, however, sufficient evidence in the record shows Plaintiff's reports of improved strength, significant activities of daily living, and ability to tolerate more activities. (R. at 20.) For example, Plaintiff testified that he attends car shows once per month and attends his daughters' sporting events. (R. at 63 and 64.) In addition, evidence in the record indicates that Plaintiff was progressing and showed improvement in strength (R. at 397), was "pretty satisfied with his level of pain" (R. at 421), that he was overall happy with his pain control and noticed a "significant reduction" in his pain complaints (R. at 425, 513), and was able to increase his activity level (R. at 516).

29

Furthermore, the ALJ expressly stated that he complied with Social Security Rule 96-7p, which requires him to consider a non-exhaustive list of factors in determining credibility.  (R. at 20.)  There is no indication that he failed to do so. *See, e.g.*, *Malcolm*, 2015 WL 1439711 at *8 (concluding that, in light of the Court's deferential approach to credibility assessments, the ALJ's express statement of compliance was persuasive).  Social Security Rule 96-7p, in accordance with 20 C.F.R. § 404.1529, requires the ALJ to consider the claimant's activities of daily living.  As addressed above, the ALJ did just that, and included such consideration in his credibility determination.  The ALJ is also required to consider details about the claimant's pain, aggravating factors, type and effectiveness of medication, other measures to relieve pain, and any other relevant factors.  Soc. Sec. Rul. 96-7p.  Here, as further evidence that the ALJ considered the relevant factors, he summarized Plaintiff's testimony that his pain increases with walking but is present when Plaintiff sits, that Plaintiff experiences spasms and burning pain in his back, has stabbing pain that goes down the back of his leg into his foot, and that his pain level has gotten worse since 2010.  The ALJ also noted that Plaintiff uses a back brace and a TENS unit, but does not use a cane.  (R. at 21.)  Plaintiff does not point to any evidence in the record to persuade the Undersigned that the ALJ failed to comply with Rule 96-7p and 20 C.F.R. § 1529 when making his credibility determination.

Plaintiff's assertion that the ALJ erred by failing to address his deficiencies in maintaining concentration is unavailing. Plaintiff merely indicates that "there are numerous instances of deficiencies in maintaining concentration, persistence and pace in the record." (DE 17 at 3.) Plaintiff does not demonstrate where in the record that information is addressed. A review of the record does not indicate that Plaintiff suffered such limitations. As such, the ALJ's purported failure to address this area was not in error.

Finally, substantial evidence supports the ALJ's credibility determination. Evidence in the record shows that, since 2010, Plaintiff has reported improved strength and improvement in his back pain. (R. at 22-23, 24, 397, 425, 516, 520.) Moreover, the ALJ assigned significant weight to the opinion of Dr. Blum, who opined that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not substantiated by the objective medical evidence. (R. at 95.) The ALJ therefore provided a sufficiently specific explanation for his credibility determination and Plaintiff has failed to demonstrate that the adverse-credibility finding was not supported by substantial evidence.

### G.  CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for

summary judgment, **GRANT** Defendant's motion for summary judgment, and

**AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: May 13, 2015                         s/Anthony P. Patti
                                            Anthony P. Patti
                                            UNITED STATES MAGISTRATE JUDGE


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on May 13, 2015, electronically and/or by U.S. Mail.

                                            s/Michael Williams
                                            Case Manager for the
                                            Honorable Anthony P. Patti
                                            (313) 234-5200